IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

MIGDALIA M. CHAPARRO-
CORTES,

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

CIV. NO.: 14-1566(SCC)

**MEMORANDUM AND ORDER**

    Plaintiff Migdalia M. Chaparro-Cortes asks this court to review the decision of Defendant Commissioner of Social Security ("the Commissioner"), denying Plaintiff's application for disability benefits. Docket No. 1. After a review of the record and the parties' memoranda, we affirm the Commissioner's decision.

*STANDARD OF REVIEW*

    Under the Social Security Act ("the Act"), a person is disabled if he is unable to do his prior work or, "considering

his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d). The Act provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." *Irlanda-Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). Thus, the Commissioner's decision must be upheld if we determine that substantial evidence supports the ALJ's findings, even if we would have reached a different conclusion had we reviewed the evidence *de novo. Lizotte v. Sec'y of Health & Human Servs.*, 654 F.2d 127, 128 (1st Cir. 1981).

The scope of our review is limited. We are tasked with determining whether the ALJ employed the proper legal standards and focused facts upon the proper quantum of evidence. *See Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's decision must be reversed if his decision was derived "by ignoring evidence, misapplying law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). In reviewing a

denial of benefits, the ALJ must have considered all of the evidence in the record. 20 C.F.R. § 404.1520(a)(3).

The Act sets forth a five-step inquiry to determine whether a person is disabled. *See* 20 C.F.R. § 404.1520(a)(4). The steps must be followed in order, and if a person is determined not to be disabled at any step, the inquiry stops. *Id.* Step one asks whether the plaintiff is currently "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If he is, he is not disabled under the Act. *Id.* At step two, it is determined whether the plaintiff has a physical or mental impairment, or combination of impairments, that is severe and meets the Act's duration requirements. 20 C.F.R. § 404.1520(a)(4)(ii). The plaintiff bears the burden of proof as to the first two steps. Step three considers the medical severity of the plaintiff's impairments. 20 C.F.R. § 404.1520(a)(4)(iii). If, at this step, the plaintiff is determined to have an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P., app. 1, and meets the duration requirements, he is disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the plaintiff is not determined to be disabled at step three, his residual functional capacity ("RFC") is assessed. 20 C.F.R. §§ 404.1520(a)(4), (e). Once the RFC is determined, the inquiry

proceeds to step four, which compares the plaintiff's RFC to his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the plaintiff can still do his past relevant work, he is not disabled. *Id.* Finally, at step five, the plaintiff's RFC is considered alongside his "age, education, and work experience to see if [he] can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). If the plaintiff can make an adjustment to other work, he is not disabled; if he cannot, he is disabled. *Id.*

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff made her initial application for disability benefits on January 10, 2011, alleging that her disability began on September 22, 2010. *See* TR. at 271.[1] The claim was initially denied, as was the reconsideration, and Plaintiff thereafter requested a hearing. *See id.* at 189-192. The hearing was held on May 13, 2013. The ALJ determined that Plaintiff was not disabled. *See id.* at 15-28. The appeals council refused to review the ALJ's decision, *see id.* at 1-5, and she filed this appeal. Docket No. 1.

The ALJ concluded that Plaintiff had the Residual

---

1. We will refer to the Social Security Transcript as "TR." throughout.

Functional Capacity ("RFC") to perform "light" work with a series of restrictions. TR. at 20. The ALJ then found that while she could no longer perform her past relevant work, there existed work that she could perform; therefore, she was not disabled. *Id.* at 27.

## *ANALYSIS*

Plaintiff alleges that the ALJ's erroneous determination that she could perform other alternative work was not supported by the record or the applicable legal standards. Moreover, she claims that the hypothetical that the ALJ posed to the vocational expert did not accurately describe her limitations.

According to Plaintiff, the ALJ erred by not having given "good reasons" for disregarding the diagnosis of "fibromyalgia, vertigo and dizzy spells," made by her treating physician, Dr. Navid Pourahmadi. Docket No. 18 at page 3. In particular, Plaintiff avers that the ALJ did not discuss whether her fibromyalgia diagnosis was severe enough to preclude substantial gainful activity. Finally, Plaintiff complains that the ALJ "failed to give adequate consideration" to her obesity, which severely limits her.

A careful review of the evidence shows that, contrary to what Plaintiff alleges, the ALJ took into consideration those

medical conditions when it concluded that Plaintiff had the RFC to perform "light" work with several additional limitations, such as the amount of weight that she could carry, the amount of time she could spend sitting or walking, among others.

In making those findings, the ALJ granted "great weight" to the clinical evaluation of Dr. Pourahmadi, whose observations are consistent with other evidence on the record. TR. at 25. The Commissioner's regulations require the ALJ to give the opinions of treating physicians "on the nature and severity" of a plaintiff's impairments "controlling weight," at least where the opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c)(2). *But see* 20 C.F.R. § 404.1527(d)(2) (noting that "final responsibility for deciding" various issues, including an impairment's nature and severity, "is reserved to the Commissioner"). The ALJ must "always give good reasons" for the weight it gives a treating source opinion. 20 C.F.R. § 404.1527(c)(2); *see also Polanco-Quiñones v. Astrue*, 477 F. App'x 745, 746 (1st Cir. 2012) (per curiam).

As part of his assessment, Dr. Pourahmadi reported that

Plaintiff had a "normal gait", normal motor strength all around, "intact sensation" and normal reflexes. TR. at 437-438. No ataxia or abnormality on gait and station were found. *Id*. He also reported "no limitations of movement, deformities, inflammation, fractures or edema." *Id*. Though he recorded that Plaintiff complained of dizziness, he found that her prognosis was "fair." *Id*.

Dr. Pourahmadi's observations are consistent with the clinical signs reported by other doctors who examined Plaintiff. For example, Dr. Sotomayor's clinical report, which was granted "great weight" by the ALJ, indicated that Plaintiff had "moderate" pain and "mild dorsal lumbar scoliosis." TR. at 434-435. The medical opinions of Dr. Rafael Queipo and Dr. C. Hernandez were also consistent with the other reports, and were only given "partial weight" because the ALJ actually found that Plaintiff had "additional limitations." TR. at 24. State agency consultant Dr. Hernández also assessed limitations consisted with a recommendation of light work. TR. at 507.

Based on those observations, the ALJ concluded that the record did not support Plaintiff's complaints of "severe body pain."TR. at 23. Plaintiff had not required periods of hospitalization, emergency room treatment or surgery. In fact,

her medical conditions had been treated with "routine treatment." TR. at 23. Moreover, her overall strength had been 4/5, as Dr. Pourahmadi found, and there was no evidence that she used a cane or other device for ambulation. *Id.* at 24. Furthermore, she fell on the "younger individual" category, as defined in 20 CFR §404.1563.

In all, the ALJ was very thorough in explaining the factors assessed when making the determination. In setting forth Plaintiff's RFC, the ALJ itemized numerous limitations, each attributable to a particular medical condition. For example, the ALJ stated that Plaintiff was "limited to occasional handling and fingering" taking into consideration her own subjective symptoms, as well as the positive Tinel signs and the "objective testing of bilaterial median entrapment neuropathy and sensorimotor polyneuropathy." TR. at 23. Another limitation, that Plaintiff should not perform work that requires "overhead reaching with the right upper extremity" (TR. at 20), stems form the ALJ's consideration of Plaintiff's "cervical pain with radiation to the right shoulder and diminished range of motion."TR. at 23.

Because Plaintiff's arguments as to the propriety of the questions posed to the vocational expert are founded on the

ALJ's allegedly improper RFC determination–a matter that we have already addressed--we find that the ALJ appropriately factored in Plaintiff's diagnosis when posing a hypothetical to the vocational expert.

### *CONCLUSION*

For the reasons stated above, we AFFIRM the decision of the Commissioner.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 15th day of March, 2016.

        S/ SILVIA CARREÑO-COLL
        UNITED STATES MAGISTRATE JUDGE